Estate of Charles A. Bickerstaff, Mrs. Mabel B. Bickerstaff, Executrix v. Commissioner.
Estate of Bickerstaff v. Commissioner
Docket No. 109051.
United States Tax Court
1942 Tax Ct. Memo LEXIS 112; 1 T.C.M. (CCH) 28; T.C.M. (RIA) 42578; October 29, 1942
*112 Estate tax: Transfers in contemplation of death: Assignment of insurance. - Decedent, while still very active in business and in good health, was killed by a bolt of lightning while playing golf on July 4, 1937. Both in 1932 and in 1934, he assigned absolutely to his wife, policies of insurance previously taken out on his own life. By this action he relinquished reversionary interests and a power to change the beneficiary, which rights he had retained under a prior settlement agreement with the insurance company. The evidence presented showed that the compelling motive for the assignments was a desire to protect his family from a financial calamity similar to one that betook his father-in-law's family as the result of a business misfortune, and as the result of the father-in-law's failure to provide adequate protection for his family. It is held that the motive for the assignment was one associated with life rather than with death, and that the transfers were not made in contemplation of death. M. E. Kilpatrick, Esq., 1045 Hurt Bldg., Atlanta, Ga., and E. D. Smith, Esq., for the petitioner. J. Marvin Kelly, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion This *113 case comes before us on respondent's determination of a deficiency of $20,690.55 in estate tax. Several issues raised by the petition were settled by stipulation, including that of the income tax of decedent for 1935 involved in the decision of the Circuit Court of Appeals for the 5th Circuit, handed down on May 27, 1942, in Mabel H. Bickerstaff, Executrix of Estate of Charles A. Bickerstaff, deceased, v. Commissioner, 128 Fed. (2d). There remains the single issue, whether the assignments of certain life insurance policies, more than 2 years before decedent's death on July 4, 1937, were made in contemplation of death or as substitutes for testamentary disposition. The facts relevant to this single issue may be briefly stated. Findings of Fact Charles A. Bickerstaff, the decedent here, was killed on July 4, 1937 by a bolt of lightning while playing golf at an Atlanta country club. He was then 52 years of age and very active in business. He was superintendent of an insurance company in Atlanta and for the two years before his death had been president of the Southeastern Underwriters' Association and chairman of several of its more important committees. He had enjoyed, until *114 his death, nearly perfect health, and in 1934 he had bought hunting privileges for 5 years over certain lands in Georgia. The New York Life Insurance Co. issued 8 policies of life insurance upon the life of decedent, as follows: [SEE TABLE IN ORIGINAL]
As to the first six of the above policies, decedent made a settlement agreement with the insurer on December 8, 1932, under which decedent's wife was designated "first beneficiary", who was to receive the interest on the proceeds of the policy monthly until her death; his four children were designated "second beneficiaries". Upon the death of the "first beneficiary", the insurer was to pay the interest to decedent's daughter for life, and to his three sons until certain named dates, when each child's full share of the proceeds might be withdrawn. If any child should die leaving issue, then the payments were to be made to such issue who should take per stirpes. If any child should die leaving no issue, then the remaining children should be entitled to share the interest of the deceased child. On complete failure of beneficiaries there was to be a reversion to decedent's executor. The following provision concludes the agreement. *115 * * * * *
All rights, benefits and privileges conferred upon me by said policies are hereby reserved, but the foregoing direction for settlement may be revoked as to any of said policies only by a further change or designation of beneficiary under said policy and also a further change in the manner of payment of the proceeds thereof made as provided therein or mutually agreed upon. These six policies were assigned by decedent to his wife on January 10, 1933. As to the last two policies in the above list, decedent entered into a settlement agreement with the insurer on January 20, 1934 similar in all respects to that used in the other policies. The identity extends to the concluding paragraph on rights reserved by the decedent. These two policies decedent assigned to his wife on January 27, 1934. Decedent carried other insurance to the value of $99,210.97 at the time of his death, the insurers, policy values and other particulars being set out in the estate tax return, put in evidence and incorporated here by reference. Decedent's wife was the daughter of Joel Hurt who died in 1926. He was at that time completing a section of the Hurt Building, a large office building in Atlanta, *116 and his whole fortune was involved in it. He had no life insurance. He became involved financially and his family lost the building in 1932 and with it practically all that Hurt had left them. This fact preyed on decedent's mind, and he resolved to prevent, if possible, a similar mischance to his estate. He wanted to make a disposition of a part of his insurance so that he would know that it would remain a protection to his family if his judgment became poor in old age or his affairs became involved. Decedent therefore worked over all his policies and determined to change the settlement agreement covering the eight policies in question so as to take them out of his estate entirely and to make an assignment of them to his wife. Decedent had worked with Hurt from the time he was 17 and knew his business better than Hurt's sons, and having seen the disastrous results in his father-in-law's case of putting all his eggs in one basket subject to being involved in financial ruin, he concluded that it would be a mistake for him to leave his own estate in the same condition. This conclusion was the controlling motive behind his assignment of the several policies in January 1933 and the others *117 in January 1934. The assignments in question were not transfers made in contemplation of death. Opinion KERN, J.: Respondent contends that the assignment by decedent in 1933 and 1934 to his wife of the eight insurance policies on his own life was made in contemplation of death within the meaning of section 302 (c), Revenue Act of 1926, as amended or was made as a substitute for testamentary disposition. Decedent was accidentally killed in 1937. He was then in good health and of the age of 52. The contention rests, therefore, not on any motive connected with the expectation of death by reason of disease or age but on the very nature of the transaction itself by which provisions were made for decedent's wife and children after his death and motivated by his concern over the death of his father-in-law under such circumstances that the latter's family were without resources. In December 1932 he had made a settlement agreement with his insurer to pay the income from the proceeds of six of the policies to his wife for life, with remainder to his four children, and with reversion to his executor on failure of issue. In January 1933 he assigned these six policies absolutely to his wife. *118 Under the earlier settlement petitioner had reserved the right to revoke "only by a further change or designation of beneficiary" or in the manner of payment of the proceeds. The same state of facts is true of the second group of two policies except as to the dates. The settlement agreement in respect of these was executed on January 20, 1934, a year after, it will be noted, decedent had made the assignment of the other policies; and the assignment of these two policies took place on January 27, 1934, only a week after the settlement agreement. All but the last two policies had some surrender value when assigned, but in all the policies this was very small in comparison with the proceeds payable on death, save in one policy where the former sum was $1,000 and the latter only $1,001.92. The evidence is uncontroverted that the compelling motive of the transfer was to make a complete gift of the policies during life, so as to remove them from decedent's power at any later period and thus protect his wife and children from any possibility of loss arising from his own improvidence or from any financial catastrophe which might befall him. Fear of such a possibility had preyed on the mind *119 of the decedent-insured since his father-in-law's estate, invested in a single project, had been lost in 1932. It should be pointed out that the assignment accomplished a substantial purpose, because the settlement agreement was not so completely irrevocable as to prevent later alteration of the beneficiaries by the decedent. An unqualified power of revocation of beneficiaries of an insurance policy brings the proceeds within the gross estate under section 302 (g), Revenue Act of 1926. . This power of revocation here was sufficiently substantial to include the policies within the gross estate, had it been in force at decedent's death, for it is now well settled law that a power which is limited to the changing of beneficiaries but does not allow the naming of the decedent-grantor as such is still taxable. . There was also a reversionary interest retained by the decedent here, on failure of issue to take, cf. ; *120 (Court of Claims); but we need not go afield to discuss this, since the assignment disposed of decedent's last interest. It is important only that by the assignments decedent parted from any interest he had under the policies of insurance in question. We have heretofore held that an assignment of a life insurance policy by the insured may be a transfer in contemplation of death within the meaning of section 302 (c) of the Revenue Act of 1926, as amended, . It is therefore only necessary to determine whether the assignments of the policies by petitioner's decedent were transfers in contemplation of death under the facts presented by the record herein. It has never been suggested that the criteria which should guide us and our approach to this problem should be different, on account of the peculiar subject matter of the transfer, from those applicable to transfers of other property rights. See ;. Petitioner's decedent at the time he applied for the insurance written upon his life may have been motivated by the *121 thought of the inevitable eventuality of death, as do all who apply for this form of insurance, but it does not follow that any motive connected with death prompted the later assignment of the policies. His family was already protected by the policies in the event of his death. The assignments were made because of decedent's fears concerning the vicissitudes of living, and in order to safeguard the life insurance represented by these policies from any improvidence or misfortune on his part during his life. The reason for the assignments, as disclosed by the record, is one associated with life rather than death. ; . See Paul, Federal Estate and Gift Taxation, Vol. 1, par. 6.11. Respondent merely suggests a contention that the assignments of the policies were transfers to take effect or enjoyment at or after decedent's death within the meaning of section 302 (c). It is obvious that all the interests which decedent had in and under the policies in question were effectively transferred by him at the time of the *122 assignments, so that nothing can be said to have passed from him to the assignee upon his death, even though his death was the occasion of the payment of the benefits called for by such policies. It follows that there was no transfer to take effect after death within the meaning of the Federal estate tax, which is a tax upon transfers and not upon inheritances. Certain stipulations were entered into by the parties with regard to other issues and particularly with regard to certain administration expenses. Consideration will be given to these stipulations in the recomputation of tax pursuant to this opinion. Therefore, Decision will be entered under Rule 50.